UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACKY DALE HAMRICK, individually and on behalf of all others similarly situated,<br><br>vs.<br><br>ENBRIDGE (U.S.), INC. | DOCKET NO. 4:20-cv-03647<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

# FIRST AMENDED COMPLAINT

1. Plaintiff Jacky Dale Hamrick brings this lawsuit to recover unpaid overtime wages and other damages from Enbridge (U.S.) Inc. (Enbridge) under the Fair Labor Standards Act (FLSA).

2. Enbridge is an energy transportation company that employs personnel, including inspectors, to carry out its work

3. Hamrick and the other workers like him regularly worked for Enbridge in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Enbridge paid Hamrick and those similarly situated workers a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Enbridge's principal office is in this District and Division.

9. Enbridge maintains a corporate headquarters in Houston, Texas.

## THE PARTIES

10. Hamrick worked for Enbridge from November 2017 to December 2018 as a welding inspector.

11. Throughout his employment with Enbridge, Hamrick was paid a day-rate with no overtime compensation.

12. Hamrick's consent to be a party plaintiff is on file with the Court. (ECF 1-A).

13. Hamrick brings this action on behalf of himself and all other similarly situated workers who were paid by Enbridge's day-rate system. Enbridge paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

14. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors employed by, or working on behalf of, Enbridge (U.S.) Inc., who were paid a day rate with no overtime at any time during the last 3 years** (Putative Class Members).[1]

15. Defendant Enbridge (U.S.) Inc. is a corporation with its principal corporate office in Houston, Texas. Enbridge (U.S.) Inc. does business throughout the United States. Enbridge may be

---

[1] The collective action definition excludes any individual who is covered by and participates in the Settlements of (1) *Zachariah Robertson, et al, individually and on behalf of all similarly situated individuals, v. Enbridge (U.S.) Inc.,* at Civil Action No. 2:19-cv-1080, United States District Court for the Western District of Pennsylvania or (2) *Christopher Aguilar v. DTE Energy Company, Enbridge (U.S.) Inc., et al.*, at Civil Action No. 2:20-cv-11451-SJM-DRG, United States District Court for the Eastern District of Michigan.

served by ECF and through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 or its counsel of record.

## COVERAGE UNDER THE FLSA

16. At all times hereinafter mentioned, Enbridge has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all times hereinafter mentioned, Enbridge has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18. At all times hereinafter mentioned, Enbridge has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce—such as equipment, hand tools, computers, automobiles, and cell phones—by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

19. At all times hereinafter mentioned, Hamrick and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

20. As will be shown through this litigation, Enbridge treated Hamrick and the Putative Class Members as employees and uniformly dictated the pay practices Hamrick and the Putative Class Members were subjected to.

## FACTS

21.  Enbridge claims to be the "leading energy delivery company in North America."[2] To complete their business objectives, Enbridge hires workers (like Hamrick) to perform inspection work for Enbridge's network of liquid and natural gas pipelines throughout the country.

22.  Many of these individuals worked for Enbridge on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these inspectors are subjected to the same or similar illegal pay practices for the performance of similar work.

23.  Enbridge paid Hamrick and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that he worked in excess of forty (40) hours in a workweek.

24.  Hamrick worked for Enbridge from November 2017 until December 2018 in Oklahoma. Throughout his time working for Enbridge, he was paid on a day-rate basis.

25.  As a welding inspector, Hamrick's primary job duties included inspecting the quality of the welds on pipelines in various projects, ensuring that the required permits and forms were completed and properly documents, and sending daily reports to his Enbridge supervisor.

26.  Hamrick normally worked 10 to 12 hours a day and 6 to 7 days a week.

27.  Hamrick and the Putative Class Members were never guaranteed a salary when he worked for Enbridge.

28.  Hamrick and the Putative Class Members were required to report the days worked to Enbridge, not the hours he worked.

---

[2] https://www.enbridge.com/about-us (last visited October 22, 2020).

29.     The work Hamrick and the Putative Class Members performed was an essential and integral part of Enbridge's core business.

30.     Enbridge's inspectors are not permitted to deviate from established standards, regulations, or guidelines.

31.     Enbridge's inspectors apply well-established techniques and procedures.

32.     The reports submitted by Hamrick and the Putative Class Members to their supervisors is generated and required by Enbridge.

33.     The assignments and schedules for Hamrick and the Putative Class Members were created and assigned by Enbridge.

34.     The timesheets that Hamrick and the Putative Class Members submitted to be paid were approved and audited by Enbridge.

35.     Enbridge controlled all the significant or meaningful aspects of the job duties performed by Hamrick and the Putative Class Members.

36.     Even though Hamrick and the Putative Class Members often worked away from Enbridge's offices, Enbridge still controlled all aspects of Hamrick and the Putative Class Members' job activities by enforcing mandatory compliance with Enbridge's policies and procedures.

37.     Enbridge directly determined or controlled Hamrick and the Putative Class Members' manner of pay, their work schedule, and prohibited them from working other jobs for other companies while they were working for Enbridge.

38.     Very little unique skill, training, or initiative was required of Hamrick and the Putative Class Members to perform their job duties.

39.     Enbridge's policy of failing to pay Hamrick and the Putative Class Members overtime violates the FLSA because they were performing non-exempt job duties.

40. Enbridge's day-rate system violates the FLSA because Hamrick and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

41. As set forth herein, Enbridge has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

42. Enbridge knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hamrick and the Putative Class Members overtime compensation. Enbridge's failure to pay overtime compensation to Hamrick and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

43. Accordingly, Hamrick and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

44. Hamrick incorporates all previous paragraphs and alleges that the illegal pay practices Enbridge imposed on Hamrick were likewise imposed on the Putative Class Members.

45. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

46. Numerous other individuals who worked with Hamrick indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

47. Based on his experiences and tenure with Enbridge, Hamrick is aware that Enbridge's illegal practices were imposed on the Putative Class Members.

48. The Putative Class Members were not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

49. Enbridge's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

50. Hamrick's experiences are therefore typical of the experiences of the Putative Class Members.

51. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

52. Hamrick has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Hamrick has an interest in obtaining the unpaid overtime wages owed to him under federal law.

53. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

54. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Enbridge will reap the unjust benefits of violating the FLSA and applicable state labor laws.

55. Furthermore, even if some of the Putative Class Members could afford individual litigation against Enbridge, it would be unduly burdensome to the judicial system.

56. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

57. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Enbridge employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

   b. Whether Enbridge's day rate pay practice meets the salary-basis test;

   c. Whether Enbridge's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether Enbridge's violation of the FLSA was willful; and

   e. Whether Enbridge's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

58. Hamrick's claims are typical of the claims of the Putative Class Members. Hamrick and the Putative Class Members sustained damages arising out of Enbridge's illegal and uniform employment policy.

59. Hamrick knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

60. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

61. Hamrick demands a trial by jury.

## RELIEF SOUGHT

62. WHEREFORE, Hamrick prays for judgment against Enbridge as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely

    FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  For an Order appointing Hamrick and his counsel to represent the interests of the FLSA Class;

c.  For an Order finding Enbridge liable to Hamrick and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to his unpaid compensation;

d.  For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

            Respectfully submitted,

            By: /s/ *Michael A. Josephson*
              Michael A. Josephson
              Texas Bar No. 24014780
              Federal ID No. 27157
              Andrew W. Dunlap
              Texas Bar No. 24078444
              Federal ID No. 1093163
              **JOSEPHSON DUNLAP**
              11 Greenway Plaza, Suite 3050
              Houston, Texas 77046
              713-352-1100 – Telephone
              713-352-3300 – Facsimile
              mjosephson@mybackwages.com
              adunlap@mybackwages.com

              Richard J. (Rex) Burch
              Texas Bar No. 24001807
              Federal ID No. 21615
              **BRUCKNER BURCH, P.L.L.C.**
              8 Greenway Plaza, Suite 1500
              Houston, Texas 77046
              713-877-8788 – Telephone
              713-877-8065 – Facsimile
              rburch@brucknerburch.com

          **ATTORNEYS IN CHARGE FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that Plaintiff's First Amended Complaint was served on Defendant and all known counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ Michael A. Josephson